UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BARBARA HELEN TAFFE,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

Defendant.

Case No.:  20-CV-1974-WVG

**ORDER ON JOINT MOTION FOR
JUDICIAL REVIEW; and
JUDGMENT**

**[Doc. No. 14.]**

Pending before the Court is the parties' joint motion for judicial review of the Commissioner of Social Security's denial of Plaintiff's application for Social Security disability benefits. For the reasons set forth below, the Court enters Judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

## I.   BACKGROUND

### A.   Procedural History

This case arises under the Social Security Act, Titles II and XVI. Plaintiff Barbara Helen Taffe filed an application for a period of disability and disability insurance benefits on April 3, 2018, and for supplemental security income on September 26, 2018, alleging disability commencing November 5, 2016. (AR 250-51, 262-66.) The Commissioner

1

denied the claim on initial determination on August 24, 2018 (AR 173-76), and Plaintiff requested reconsideration of the initial determination on September 18, 2018 (AR 177-81). The Commissioner denied reconsideration on October 30, 2018. (AR 182-88.) Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). (AR 189-90.) ALJ Eric Benham conducted the oral hearing on October 22, 2019 (AR 95-126) and issued an unfavorable decision on November 26, 2019 (AR 18-34).

Plaintiff then requested that the Appeals Council review the ALJ's decision on January 13, 2020 (AR 245-46), but the Appeals Council denied the request for review on August 18, 2020 (AR 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). This timely civil action followed. The Court has jurisdiction to review the final decision of the Commissioner for substantial evidence and error of law. 42 U.S.C. §§ 405(g), 1383(c).

**B.    Medical Background**

Gary Boone, M.D., treated Plaintiff and was her primary care physician. Focusing on mental impairments, Dr. Boone's treatment notes from June 2017 listed clinical depression as an active problem. (AR 373.) Plaintiff's psychiatric medication included bupropion (Wellbutrin), fluoxetine (Prozac), and trazodone. (AR 373.) On June 8, 2017, Dr. Boone observed that Plaintiff had appropriate mood and affect and normal motor movements. (AR 374.) On September 5, 2017 and February 16, 2018, Dr. Boone again found Plaintiff had appropriate mood and affect and normal motor movements. (AR 368, 371.)

In July 2018, Jaga Nath Glassman, M.D., conducted a psychiatric consultative evaluation of Plaintiff. (AR 427-34.) Dr. Glassman listed Plaintiff's psychiatric medication as Wellbutrin, Prozac, and Trazodone. (AR 429.) Dr. Glassman conducted a mental status examination and observed that Plaintiff presented as mildly unkempt, carried a somewhat dirty purse, appeared quite depressed in mood, exhibited no real animation or spontaneity, mostly spoke in a monotone voice, gave brief answers, was frequently tearful, and had little positive affect. (AR 430.) Dr. Glassman also described Plaintiff as exhibiting intact thought

process, good eye contact, cooperative, polite, respectful, socially appropriate, able to follow all instructions, goal directed, and cognitively intact with average to above average intellectual functioning. (*Id.*)

Dr. Glassman's impression was that Plaintiff presented as considerably depressed-appearing. (*Id.*) Dr. Glassman diagnosed Plaintiff with major depression, recurrent; dysthymic disorder; and borderline personality disorder. (AR 431.) Dr. Glassman assessed the following about Plaintiff's abilities: the ability to understand and follow simple instructions; mild impairment in getting along with others and behaving in a socially-appropriate manner; marked impairments in maintaining concentration, persistence, and pace; and a marked impairment in adapting to changes and stresses in a workplace setting. (*Id.*) In his July 24, 2018 report, Dr. Glassman also noted that Plaintiff was, "not currently in any kind of psychiatric or mental health treatment" and denied a history of psychiatric hospitalizations. (AR 428.) He noted that she was well-engaged, made good eye contact, and was cooperative, polite, and respectful in her attitude and demeanor. (AR 430.)

In August 2018, Joshua Schwartz, Ph.D., reviewed the record on initial consideration. (AR 138.) Dr. Schwartz diagnosed Plaintiff with severe impairments of depressive, bipolar, and related disorders. (AR 134.) Dr. Schwartz opined Plaintiff remained capable of the following: understanding and remembering simple instructions; carrying out simple instructions; able to maintain concentration and attention for extended periods for simple tasks; able to sustain appropriate interaction with the public and maintain relationships with coworkers and supervisors; and capable of appropriately responding to most changes in the work setting. (AR 138.) Joshua Boyd, Psy.D., reviewed the record in October 2018 and agreed with Dr. Schwartz's assessment. (AR 149-53.)

Dr. Boone's treatment notes from August 2018 listed clinical depression as an active problem. (AR 443.) The history of present illness reported that Plaintiff felt down and depressed and continued taking Wellbutrin and Prozac. (*Id.*) Dr. Boone described Plaintiff's mood and affect as appropriate but subsequently described her affect as

depressed. (AR 445.) Dr. Boone reported that Plaintiff was newly on Medi-Cal and would follow up with her new provider. (AR 443.)

In September 2018, Plaintiff presented to the Family Health Center of San Diego for an initial evaluation by Marci Kyle, L.C.S.W. (AR 452.) Plaintiff reported a lifetime history of depression, particularly during the prior year. (*Id.*) Plaintiff described the prior year as a "difficult spell, not able to work." (*Id.*) Plaintiff reported needing to sleep a lot, feeling sad, hopeless, overwhelmed, having no energy to shower and be presentable, and having no energy to keep a structured schedule. (*Id.*) The mental status examination was unremarkable. (AR 456-57.) The recommendation included ongoing psychotherapy and medication management with a normal memory and indicated that Plaintiff did not demonstrate an inability to concentrate. (AR 457.) The diagnosis listed major depression, single episode, mild, with anxious distress. (AR 452.)

In November 2018, Plaintiff presented to the Family Health Center of San Diego again (AR 481), where Edward Erbe, M.D., treated Plaintiff (AR 484). Plaintiff reported that her depressive episodes manifested in sadness all day, very low interest, increase in appetite, very low energy, very low concentration, very low self-esteem, and an increase in sleep. (AR 481.) Over the prior month, Plaintiff rated her mood as eight on a scale of zero (no depression) to ten (worst depression) and rated her typical anxiety between manageable to high. (*Id.*) Dr. Erbe conducted a mental status examination. (AR 482.) The exam was unremarkable except Dr. Erbe described Plaintiff's mood and affect as restricted. (*Id.*) The plan included increasing bupropion to try to reduce her depression. (AR 481.) Dr. Erbe also continued Plaintiff on fluoxetine and Trazodone. (AR 482.) The diagnosis listed major depressive disorder. (AR 481.)

Dr. Erbe treated Plaintiff again in March 2019. (AR 477-80.) He found Plaintiff had appropriate attention span and concentration, linear thought processes, and normal thought content. (AR 478.) Plaintiff described working as a nanny as very stressful. (AR 477.) Over the prior month, Plaintiff rated her mood as seven to eight on a scale of zero (no depression) to ten (worst depression) and rated her typical anxiety as between manageable to high. Dr.

Erbe and Plaintiff discussed adding lithium carbonate or an antipsychotic to reduce depression. Dr. Erbe recommended starting psychotherapy, and Plaintiff expressed interest. (*Id.*) Dr. Erbe conducted a mental status examination. (AR 478.) The exam was unremarkable except Dr. Erbe described Plaintiff's mood and affect as restricted. The plan included continuing bupropion, fluoxetine, and Trazodone. The diagnosis listed major depressive disorder. (*Id.*)

In April 2019, Plaintiff saw Bruce Thiessen, Ph.D., based on a referral from Dr. Erbe. (AR 472-76.) Dr. Theissen conducted a mental status examination and documented the following abnormalities: lethargic level of consciousness; slow speech; depressed mood; poor recent memory; inability to concentrate; and slowed motor skills. (AR 473-74.) The recommended treatment plan included psychiatry appointments and therapy. (AR 474.) The diagnosis listed major depressive disorder, unspecified. (*Id.*)

Dr. Erbe treated Plaintiff again in May 2019. (AR 468-71.) He found Plaintiff demonstrated linear thought processes and normal thought content. (AR 469.) Plaintiff reported usually sleeping 13 hours each day. (AR 468.) Over the prior month, Plaintiff rated her mood as seven to eight on a scale of zero (no depression) to ten (worst depression) and rated her typical anxiety as between manageable to high. (*Id.*) Dr. Erbe conducted a mental status examination. (AR 469.) The exam was unremarkable, except Dr. Erbe described Plaintiff's mood and affect as restricted. (*Id.*) The recommended treatment plan included continuing bupropion, fluoxetine, and Trazodone. (AR 468.) Dr. Erbe explained that he could not "think of any medication increase, substitution or addition which is without significant risk, likely to be tolerated or likely to reduce her depression." (*Id.*) The diagnosis listed major depressive disorder. (*Id.*)

On July 29, 2019, treating physician Jose Alfredo Quinonez, M.D., found Plaintiff had normal affect, appropriate mood and affect, and normal speech. (AR 47.) He noted that Plaintiff's anxiety and depression were stable and controlled with medication. (AR 49.)

## C.    The ALJ's Decision

The ALJ calculated that Plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through December 31, 2021. (AR 23, ¶ 1.) The ALJ thereafter used the five-step sequential evaluation process to guide his decision. 20 C.F.R. § 404.1520. At step one, ALJ agreed that Plaintiff had not engaged in substantial gainful activity since November 5, 2016. (*Id.* at ¶ 2.) At step two, the ALJ found that Plaintiff had medically determinable severe impairments of major depression disorder and dysthymic disorder. (*Id.* at ¶ 3.) At step three, the ALJ decided that the impairments did not meet or equal any "listed" impairment. (AR 24, ¶ 4 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1.) The ALJ assessed Plaintiff as retaining the residual functional capacity to perform work at all exertional levels but limited to simple work and is likely to miss one day of work per month. (AR 25, ¶ 5.)

At step four, ALJ compared the residual functional capacity assessed to the demands of Plaintiff's past relevant work as a real estate agent, personal recruiter, sales representative for communication equipment, stock control clerk, and child monitor and decided that Plaintiff could not perform her prior work. (AR 28, ¶ 6.) At step five, ALJ made findings of Plaintiff's vocational profile. The ALJ classified Plaintiff as an individual closely approaching advanced age on the alleged onset date. (*Id.* at ¶ 7.) The ALJ categorized Plaintiff as possessing at least a high school education. (*Id.* at ¶ 8.) The ALJ found that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the work of a laundry worker, sandwich maker, and kitchen helper. (AR 29, ¶ 10.) The ALJ concluded that Plaintiff did not meet the definition of disability between November 5, 2016, and the date of the decision. (*Id.* at ¶ 11.)

## II.    LEGAL STANDARD

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported

by substantial evidence in the record and contains no legal error. *Id.*; *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Where the evidence is susceptible to more than one rational interpretation, an ALJ's decision must be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to an ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Even if the reviewing court finds that substantial evidence supports an ALJ's conclusions, the court may set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, where the ALJ's error is harmless, no reversal is warranted. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds, as recognized in *Sweets v. Kijakazi*, 855 F. App'x 325, 326 (9th Cir. 2021).

## III.  DISCUSSION

### A.    The ALJ properly Considered Plaintiff's Testimony.

During the hearing before the ALJ, Plaintiff reported that maintaining attendance at work would impede her ability to sustain full-time work. (AR 104.) She reported trouble getting out of bed and out of the house due to the symptoms from her mental impairments. (AR 104.) Plaintiff claimed her symptoms made her want to stay in bed most of the time (AR 107), and that she used to miss more than one day of work a month, (AR 124.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (AR 26.) However, the ALJ found Plaintiff's

allegations of physical symptoms less persuasive than her allegations of mental symptoms because the ALJ found that she suffered from nonsevere physical impairments but severe mental impairments. (AR 23-24.) The Court finds that the ALJ properly considered Plaintiff's subjective testimony and complaints.

### 1.   Legal Standard

Congress prohibits granting disability benefits based exclusively on a claimant's subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); *see also* 20 C.F.R. § 404.1529(a); 20 C.F.R. § 404.919(a). Indeed, "[a]n ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Act]." *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citation omitted). The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. *Id.*

If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. *Thomas*, 278 F.3d at 958-59 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *See Thomas*, 278 F.3d at 959; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

## 2.   Discussion

Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: major depressive disorder and dysthymic disorder.[1] Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied. Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering. As a result, the Court must determine whether the ALJ provided clear and convincing reasons

---

[1] "Persistent depressive disorder, also called dysthymia (dis-THIE-me-uh), is a continuous long-term (chronic) form of depression." https://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/symptoms-causes/syc-20350929.

for discounting Plaintiff's subjective claims regarding her symptoms. *See Lingenfelter*, 504 F.3d at 1036.

Plaintiff first argues that the ALJ failed to identify the specific subjective claims that the ALJ decided were not credible and thus did not provide the necessary information for meaningful judicial review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding legal error where ALJ failed to identify the testimony she found not credible and consequently "did not link that testimony to the particular parts of the record supporting her non-credibility determination.")). She argues: "Importantly, the ALJ could not have rejected Taffe's testimony that maintaining attendance would pose a problem for her in sustaining full time work, and that she used to miss more than one day of work a month, because the ALJ never acknowledged that testimony in the decision" and that this error "was material because the vocational expert testified that missing more than one day of work per month would eventually lead to termination." (Doc. No. 14 at 12.) Defendant responds the ALJ did in fact identify "both Plaintiff's pertinent allegations and the substantial evidence contradicting them (AR 25 (allegations of difficulty concentrating, focusing, maintaining personal care, and decreased social activity), 26 (allegations of lack of energy, sleeping 12 hours daily, neck and back pain, cognitive difficulties, getting stressed about simple things, and worsening depression))." (*Id.* at 21.) Defendant is correct, and Plaintiff's claim that the ALJ only generically found that the severity of Plaintiff's symptoms was simply inconsistent with the medical evidence is belied by the record.

Assuming, for the sake of argument, that the ALJ erred by not specifically identifying Plaintiff's testimony that she would miss more than one day of work per month, any assumed error is harmless. Other than Plaintiff's own self-serving statements about missing more than one day of work per month, the record contains *no* objective evidence that this would be true. Indeed, none of the doctors or other medical providers Plaintiff visited opined that she would miss more than one day of work per month. This includes Dr. Glassman, whose opinion Plaintiff contends the ALJ should have credited. To the extent Plaintiff relies on her own symptom reporting to the doctors, even Dr. Glassman

10

opined that Plaintiff's symptoms and functionality could improve with consistent treatment (which the record does not demonstrate). Where, as here, the record does not support subjective testimony, the ALJ is certainly not obligated to credit that testimony. Thus, any assumed error was harmless given the lack of support for Plaintiff's subjective testimony.

Furthermore, the ALJ acknowledged Plaintiff's claim of lifelong depression, and he properly discounted its severity. While Plaintiff had reported a long history of depression, she was nonetheless able to maintain a high level of functioning for much of this period of time. Indeed, Plaintiff had reported that she had been able to maintain a good career; was interested in physical fitness, fashion, and health; and she had an active social life—all despite her depression. (AR 26, 452.) Thus, the ALJ reasonably found Plaintiff's history of successful high function lessened the disabling impact of her depression.

Insofar as Plaintiff complained that her depression worsened in recent years beyond the base level from prior years, the ALJ properly discounted this as well when he noted the conservative care she had received. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008) (noting that "a conservative course of treatment can undermine allegations of debilitating pain . . . .").[2] In this regard, Plaintiff did not seek treatment from any mental health professional for almost two years into the alleged disability period, and the visits were infrequent. (AR 27, 250, 488.) While Plaintiff alleged that she was disabled since November 5, 2016, she did not receive treatment from a mental-health practitioner until September 4, 2018. (AR 27, 250, 488.) Thus, the ALJ's finding that Plaintiff did not avail herself of, or require, treatment from mental healthcare professionals for almost two years undermined her assertion that her symptoms were so severe as to render her disabled was not an unreasonable finding. Further, the ALJ noted that the treatment Plaintiff had

_____

[2] Nor has Plaintiff provided reasons for her conservative care. *See William D. v. Berryhill*, No. 18CV38-SI, 2019 U.S. Dist. LEXIS 72311, at *13 (D. Or. Apr. 30, 2019) ("If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms.") (citing *Carmickle*, 533 F.3d at 1162.)

received was conservative, consisting of medication management with her general practitioner and psychotherapy. (AR 27; *see, e.g.*, AR 406.) Moreover, on July 31, 2019—after Plaintiff began receiving treatment—her treating physician, Jose A. Quinonez, M.D., provided her treatment for a "*moderate* episode of recurrent major depressive disorder" and noted that her depression was stable and controlled. (AR 49 (emphasis added).) In sum, the ALJ properly found that Plaintiff's level of treatment was not consistent with limitations beyond her RFC.

Finally, the ALJ did not improperly rely on the prior administrative findings from Joshua Schwartz, Ph.D., and Joshua Boyd, Psy.D., both of whom reviewed the record and concluded that Plaintiff could perform simple tasks (AR 27, 132, 150, 164). *See Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). Both Dr. Schwartz and Dr. Boyd found that Plaintiff could perform simple tasks. (AR 27, 132, 150, 164.) In relying on these doctors' findings, the ALJ necessarily discounted Plaintiff's allegations, as both physicians concluded that Plaintiff was more capable than she asserted. The ALJ explained that both Dr. Schwartz and Boyd's findings were supported by and consistent with other substantial evidence in the record—specifically, Plaintiff's conservative treatment, the delay in seeking care, and the medical evidence as a whole, which included normal findings on mental-status examination. (AR 27.)

In sum, the ALJ properly found that Plaintiff did not present sufficient evidence to support limitations beyond her RFC.

**B.     Whether the ALJ Properly Considered the Opinion of Doctor Glassman**

**1.     Background**

The ALJ was tasked with weighing prior administrative findings from two physicians and a medical opinion from one physician. As to the prior administrative findings, Drs. Schwartz and Boyd reviewed Plaintiff's medical records and concluded that Plaintiff could perform simple tasks and maintain a regular schedule. (AR 137, 152, 166.)

In the medical opinion, consultative examiner Jaga Nath Glassman, M.D., found Plaintiff was more limited—he concluded that Plaintiff had marked limitations in maintaining concentration, persistence, and pace and handling workplace stressors (AR 433.) Dr. Glassman also noted that Plaintiff had not been in any mental health treatment for at least a year and that consistent treatment could help decrease her symptoms and improve functioning. (AR 433.)

After reviewing the medical opinions and prior administrative findings in light of the two main regulatory factors—supportability and consistency, 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2)—the ALJ concluded that Dr. Schwartz and Dr. Boyd's prior administrative findings were persuasive and that Dr. Glassman's opinion was not persuasive. (AR 27.) As to the supportability factor, the ALJ believed that Drs. Schwartz and Boyd's prior administrative findings were supported by their analyses of the record and substantial evidence. The ALJ believed that, by contrast, Dr. Glassman's opinion was not well supported by his own clinical findings which included Plaintiff presenting with average to above-average intelligence; coherent, relevant, and goal-directed thought process; and the ability to follow all instructions. (AR 430.) As to the factor of consistency, the ALJ believed that the weight of the medical evidence as well as Plaintiff's treatment history were consistent with Drs. Schwartz and Boyd's assessments, not Dr. Glassman's. In his written decision, the ALJ cited the following reasons for finding that Dr. Glassman's opinion was not persuasive:

> I find Dr. Glassman's opinion is not persuasive. Dr. Glassman opined claimant had marked impairment with concentration, persistence, and pace and marked impairment adapting to changes and stresses in the workplace setting. Dr. Glassman's opinion is not well supported by his own clinical findings, as claimant arrived 30 minutes early for the appointment, was capable of repeating three of three words after two repetitions, and she remembered all three after five minutes. She was able to follow all instructions. She did serial threes without error and a simple money-changing problem correctly. These clinical findings do not support Dr. Glassman's ultimate opinion with regard to claimant's marked work-related limitations. In addition, Dr. Glassman's opinion is inconsistent with the medical evidence

of record as a whole. It is inconsistent with fairly normal findings on mental status examinations throughout the record, as documented above. Dr. Glassman's opinion is dated in July 2018, but claimant did not seek consistent mental health treatment until September 2018, which suggests her symptoms were not distressing enough to seek consistent psychiatric treatment at the time Dr. Glassman rendered his opinion. Dr. Glassman's opinion is also not fully consistent with the absence of any psychiatric hospitalizations for claimant, which one may expect given his opinion on her marked limitations.

(AR 27-28 (citations omitted).)

### 2.    Legal Standard

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The "treating source rule" applied in connection with the prior version of the regulations allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.[3] *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). This measure of deference to a treating or examining physician is no longer applicable under the 2017 revised regulations. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853) (Jan. 18, 2017) (available at 82 FR 5844, 2017 WL 168819) ("[W]e are not retaining the treating source rule . . . for claims filed on or after March 27, 2017."); *see also Jones v. Saul*, No. 19CV1273-AC, 2021 U.S. Dist. LEXIS 29751, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (finding the revised

---

[3] Plaintiff does not expressly argue that the ALJ failed to provide either clear and convincing or specific and legitimate reasons for discounting Dr. Glassman's opinion.

regulations valid, entitled to deference, and supersede prior Ninth Circuit case authority interpreting the treating physician rule); *Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 U.S. Dist. LEXIS 115628, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("[T]he Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'") (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)).

The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

### 3.     Discussion

The ALJ's evaluation of the medical evidence was supported by substantial evidence. The role of this Court is not to reconsider the record *de novo* and supplant the ALJ's decision with its own. While Plaintiff accuses the ALJ of selectively choosing from Dr. Glassman's evaluation, Plaintiff also erroneously isolates and individually attacks the reasons the ALJ cited. However, when taken together, the totality of the ALJ's reasons for discounting Dr. Glassman's evaluation are proper and sufficiently satisfy the ALJ's obligation to provide reasons. And those reasons are supported by the record.

The ALJ reasonably found that Dr. Glassman's examination findings were inconsistent with Plaintiff's mental-status examinations throughout the alleged disability period. As the ALJ explained, Plaintiff's mental-status examinations by her treating providers revealed largely normal findings. (AR 27.) Among other substantial evidence supporting the ALJ's finding, on various occasions, Plaintiff presented with an appropriate mood and affect, normal speech, normal attention and concentration, and normal motor movements. (*See, e.g.*, AR 47, 80, 86, 368, 371, 374, 382, 456-57, 469, 478, 482, 490-91, 495, 497, 500). While Plaintiff points to isolated excerpts of the record that she argues could have supported a different outcome, she ignores the various contrary findings that support the ALJ's weighing of the medical evidence. She also ignores that the ALJ

accounted for medical findings supporting functional limitations and accounted for them in Plaintiff's restrictive RFC, which provided that Plaintiff would miss one day of work per month and be limited to only simple work. (AR 25)

Finally, Plaintiff also selectively neglects to mention that Dr. Glassman's conclusion was that "[c]onsistent treatment could help decrease [Plaintiff's] symptoms and improve her functioning." (AR 431.) Thus, even Dr. Glassman believed Plaintiff could benefit from consistent treatment—precisely what the record showed was lacking. And the ALJ did not error by noting that he expected someone with debilitating mental health issues of the type Plaintiff claimed would have had a higher level of treatment reflected in the record.

The ALJ's evaluation of Dr. Glassman's consultative examination findings was supported by substantial evidence and was not erroneous.

## C.  The ALJ Did Not Act Under an Unconstitutional Delegation of Authority.[4]

Plaintiff contends her claim for disability benefits was decided under an unconstitutional delegation of authority to the ALJ. According to plaintiff, Andrew Saul held the position of Commissioner of the Social Security Administration until he was terminated by President Biden, and during his tenure, the Supreme Court held in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), that the structure of a different federal agency violated the separation of powers doctrine and was therefore unconstitutional. Plaintiff believes the SSA suffers from the same unconstitutional structure, and, as a result, she argues that former Commissioner Saul's delegation of

---

[4] The Court has reviewed Magistrate Judge Karen S. Crawford's superb and unassailable analysis of this issue in *Frank W. v. Kijakazi*, No. 20cv1439-KSC, 2021 U.S. Dist. LEXIS 227031 (S.D. Cal. Nov. 23, 2021) and fully agrees with Judge Crawford's analysis and conclusion. Accordingly, rather than unnecessarily reinvent the proverbial wheel—and in the interests of judicial economy—the Court adopts, as modified, Judge Crawford's analysis.

authority to the ALJ and the Appeals Council was unconstitutional, rendering the adjudication of her claim for disability benefits likewise unconstitutional.

In support of this contention, Plaintiff also cites another Supreme Court decision, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), which involved an unconstitutional appointment of an ALJ in a matter before the Securities and Exchange Commission ("SEC"). Citing *Lucia*, plaintiff asserts that "[w]here an agency's actions have been completed under unconstitutional authority, these actions are also constitutionally defective." (Doc. No. 14 48.) Also based on *Lucia*, Plaintiff argues the appropriate remedy for an unconstitutional appointment is a new hearing before a properly appointed ALJ. However, Plaintiff's reliance on *Seila Law* and *Lucia* is wholly misplaced.[5]

In *Seila Law*, a law firm subject to a subpoena by the newly created Consumer Financial Protection Bureau ("CFPB") argued that the subpoena was invalid because the structure of the CFPB violated the Constitution on separation of powers grounds, and the Supreme Court agreed. *Seila Law LLC*, 140 S. Ct. at 2194. The CFPB was led by a single director who could only be removed by the President for "inefficiency, neglect, or malfeasance." *Id.* at 2191. This and other features combined to make the structure of the CFPB "incompatible with our constitutional structure" which "scrupulously avoids concentrating power in the hands of any single individual." *Id.* at 2191-92, 2202, 2204. However, the Supreme Court concluded the unconstitutional removal restriction was "severable from the other statutory provisions bearing on the CFPB's authority," meaning that the agency could continue to operate but that "its Director . . . must be removable by the President at will." *Id.* at 2192. The case was remanded for further consideration of the validity of the subpoena.[6] *Id.* at 2211.

---

[5] Plaintiff also cites *Collins v. Yellen*, 141 S. Ct. 1761 (2021) with no meaningful discussion.

[6] In dicta, while addressing arguments in the case on the structure of the CFPB, the Supreme Court mentioned the SSA and noted it "has been run by a single Administrator since 1994."

1    Next, the Supreme Court in *Collins v. Yellen* considered a similar constitutional

2    challenge to the statutory structure of the Federal Housing Finance Agency ("FHFA"),

3    which was also headed by a single director who could only be removed by the President

4    "for cause." *Collins v. Yellen*, 141 S. Ct. 1761, 1770-71 (2021). The Supreme Court held

5    that "*Seila Law* [was] all but dispositive" and concluded that the "for cause" restriction on

6    the President's removal power violated separation of powers. *Id.* at 1783, 1787. In other

7    words, the director of the FHFA serves at the pleasure of the President and can be removed

8    "at will" despite the statute permitting his removal only "for cause." *Id.* at 1784, 1787.

9    The foregoing notwithstanding, the Supreme Court in *Collins* concluded there was

10    no constitutional defect in the method of appointment for the director, the director was

11    "properly appointed," and there was no reason to void any of the actions taken by the

12    FHFA. *Id.* at 1787. In other words, there was "no basis for concluding that any head of the

13    FHFA lacked the authority to carry out the functions of the office." *Id.* at 1788.

14    Consequently, any plaintiff seeking relief on separation of powers grounds would have to

15    show that the restriction on the President's removal power caused harm. *Id.* at 1788-89.

16    For example, the Supreme Court noted there could be a compensable harm if the President

17    "had attempted to remove a Director but was prevented from doing so by a lower court

18    decision holding that he did not have 'cause' for removal. Or suppose that the President

19

20

_____

21    *Seila Law LLC*, 140 S. Ct. at 2202. The Supreme Court also noted that "President Clinton

22    questioned the constitutionality of the SSA's new single-Director structure upon signing it

23    into law." *Id.* Nonetheless, the Supreme Court also distinguished the structure of the SSA

24    from that of the CFPB, noting that "the SSA lacks the authority to bring enforcement

25    actions against private parties. Its role is largely limited to adjudicating claims for Social

26    Security benefits." *Id.* The Court suspects this reference to the structure of SSA may be the

27    impetus for the many recent, meritless separation of powers challenges in other SSA

28    disability cases before the District Courts. *See, e.g.*, *Robinson v. Kijakazi*, 2021 U.S. Dist.

LEXIS 206914, 2021 WL 4998397 (W.D.N.C. Oct. 27, 2021); *Amanda B. v.*

*Commissioner*, 2021 U.S. Dist. LEXIS 206254, 2021 WL 4993944, at 9 (D. Or. Oct. 26,

2021); *Hester v. Commissioner*, 2021 U.S. Dist. LEXIS 189112, 2021 WL 4476867 (W.D.

Wa. Sept. 30, 2021).

had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789.

Plaintiff also cites a Memorandum Opinion prepared by the Deputy Counsel to the President entitled "The Constitutionality of the Commissioner of Social Security's Tenure Protection," 45 Op. O.L.C. ___, slip op. (July 8, 2021), available online (using Google, search "The Constitutionality of the Commissioner of Social Security's Tenure Protection" and select first result from United States Department of Justice). This Memorandum Opinion follows *Collins* and *Seila Law* in concluding that the President "may remove the Commissioner of Social Security at will notwithstanding the statutory limitation on removal in 42 U.S.C. § 902(a)(3)."[7] *Id.* at 1.

However, the Memorandum Opinion also states as follows: "The conclusion that the removal restriction is constitutionally unenforceable does not affect the validity of the remainder of the statute." *Id.* In this regard, the Court notes that 42 U.S.C. section 902 indicates that the Commissioner is appointed by the President "with the advice and consent of the Senate." 42 U.S.C. § 902(a)(1). And section 902(a)(7) gives the Commissioner the authority to "assign duties, and delegate, or authorize successive redelegations of, authority to act and to render decisions, to such officers and employees of the Administration as the Commissioner may find necessary." Thus, even the Memorandum Opinion upon which Plaintiff relies agrees that this latter section on the delegation of authority remains valid.

Next, in *Lucia*, 138 S. Ct. 2044 (2018), the plaintiff challenged an SEC administrative proceeding before an ALJ on the grounds that the ALJ was unconstitutionally appointed in violation of the Appointments Clause. The Supreme Court agreed. The record indicated the ALJ assigned to the plaintiff's case was appointed by

---

[7] Section 902(a)(3) states in pertinent part as follows: "An individual serving in the office of Commissioner may be removed from office *only pursuant to a finding by the President of neglect of duty or malfeasance in office*." (emphasis added).

"SEC staff members," but the Appointments Clause of the Constitution required that ALJs, as officers of the United States, had to be appointed by the President, a court of law, or the head of a department. *Id.* at 2050-52. The remedy for the unconstitutional appointment by SEC staff members was a new hearing before a properly appointed ALJ. *Id.* at 2055.

As plaintiff contends, *Seila Law*, *Collins*, and the Memorandum Opinion referenced in plaintiff's Motion indicate that section 902(a)(3) is similar to the statutory removal provisions in these cases and likely violates separation of powers because it restricts the President's power to remove the Commissioner of the SSA. However, that does not mean the ALJ's adjudication of plaintiff's disability claim was infected, tainted, or decided under an unconstitutional delegation of authority. As outlined above and as explained by the Supreme Court in *Seila Law* and *Collins*, the specific sections of the governing removal statutes that violated separation of powers in these cases were separate and severable from other provisions governing the operations of the CFPB and the FHFA. In *Seila Law*, for example, the Supreme Court held the CFPB had the authority to continue its operations despite the separation of powers violation in the removal statute. *Seila Law*, 140 S. Ct. at 2192. Likewise, in *Collins*, the Supreme Court held there was no reason to void any of the actions taken by the FHFA because there was nothing to indicate the method of appointment for the director was unconstitutional or that the director "lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788.

Here, even if the Court assumes that section 902(a)(3), the removal statute that applies to the Commissioner of the SSA, violates separation of powers, Plaintiff has not presented any facts indicating this impacted the SSA's operations or that anyone involved in adjudicating his disability claim at the SSA otherwise lacked the authority to do so. In fact, Justice Kagan has directly cast doubt that this line of cases would apply to the SSA. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year . . . given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.").

Finally, although the Supreme Court in *Collins* did indicate it was possible for a party to establish "compensable harm" based on a separation of powers violation in a removal statute, the Court also held that the "compensable harm" would have to have a direct nexus to a separation of powers violation. *Id.* at 1788-89. Here, there is no fathomable direct nexus between the ALJ's adjudication of plaintiff's disability claim and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Plaintiff's allegations merely amount to general dissatisfaction with the outcome of the adjudication of his SSA disability claim.

In sum, the Supreme Court's decisions in *Seila Law*, *Collins*, and *Lucia* do not support Plaintiff's contention that the ALJ issued a decision based on an unconstitutional delegation of authority.

## IV.   CONCLUSION

Based on the foregoing, the Court enters Judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

DATED:  February 23, 2022

_____
Hon. William V. Gallo
United States Magistrate Judge